IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ERIC L. BOOTHE, #N95190, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 3:15-cv-00192-NJR |
| | ) |
| DR. AFLON DAVID and | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Eric Boothe is currently incarcerated at the Sheridan Correctional Center in Sheridan, Illinois, but was previously incarcerated at Shawnee Correctional Center in East Vienna, Illinois, up to at least 2012. (Doc. 1 at 1 & 5.) Proceeding *pro se*, Boothe alleges that he was provided with inadequate care for his hemorrhoid condition by Dr. David during his time at Shawnee, and he brings a civil rights claim pursuant to 42 U.S.C. § 1983 against Dr. David, along with state law claims of negligence and intentional infliction of emotional distress. (*Id.* at 1 & 5.) He also names David's employer, Wexford Health Sources, Inc., as a Defendant. (*Id.* at 1.)

This matter is now before the Court for a preliminary review of Boothe's complaint pursuant to 28 U.S.C. § 1915A. Under 28 U.S.C. § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is

frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

## Procedural History

According to Boothe's complaint, since May 2008, he has suffered from hemorrhoid problems that have required ongoing medical attention. (*Id.* at 5.) According to the exhibits attached to Boothe's complaint, up until January 2011, Boothe was taking Metamucil for his hemorrhoids. (Doc. 1-2 at 4.) In June 2011, he was seen by Dr. David, a physician working for Wexford who provided care to prisoners at Shawnee. (*Id.*) When he began seeing Dr. David, Boothe complained about his hemorrhoids and about the prison's soy diet, which Boothe claimed aggravated his hemorrhoids and caused him "very strenuous bowel movements." (Doc. 1 at 5.) At some point in 2011, Dr. David took Boothe off of Metamucil and placed him on milk of magnesia, and he allegedly did not take any steps related to Boothe's diet complaints. (*Id.*)

In February 2012, Boothe saw a nurse for complaints of dizziness and was ultimately treated by Dr. David again. (*Id.*) Boothe informed Dr. David of his ongoing hemorrhoid issues; he was told to "drink more water and increase [his] salt intake." (*Id.*) Boothe asserts that Dr. David refused to acknowledge Boothe's significant hemorrhoid problems, and he did not reissue Metamucil or otherwise treat Boothe's "serious bleeding" at that time. (*Id.*)

On March 2, 2012, Boothe visited the Health Care Unit at Shawnee again, and Dr. David was contacted concerning rapid changes in Boothe's vital signs. (*Id.*) Boothe was placed on 23 hour observation at that time, which was extended on March 4, 2012. (*Id.*) On March 6, 2012, it was discovered that Boothe had severe anemia, which he claims was caused by a lack of adequate treatment by Dr. David and Wexford. (*Id.*) Shortly thereafter, he was transferred to Heartland Regional Medical Center in Marion, Illinois, where he received blood transfusions and

surgery for his hemorrhoids. (*Id*.) He was returned to Shawnee's Health Care Unit on March 14, 2012. (*Id*.) At that time, Boothe claims that Dr. David "finally treat[ed]" him for his hemorrhoid condition, but only with stool softeners "for a very short time." (*Id*.) While his complaint is unclear, he appears to claim that Dr. David still refuses to give him Metamucil or alter his soy diet. (*Id*.) Boothe also claims that he is still "suffering from bleeding all this time." (*Id*.)

On February 23, 2015, Boothe filed a § 1983 complaint in this Court. (*Id*. at 1.)

### Discussion

Read liberally, Boothe's complaint alleges that Dr. David failed to adequately treat his hemorrhoid condition, that he suffered harm based on the delay in treatment, and that he continues to suffer damages from this failure to treat. (*Id.* at 5.) Boothe raises claims against Dr. David under 42 U.S.C. § 1983 for deliberate indifference to his medical condition, as well as state law claims for "negligence" and intentional infliction of emotional distress. (*Id.* at 1.) Boothe also names Wexford Health Sources as a Defendant, and in doing so appears to bring a § 1983 claim against it as well, without providing any specifics as to Wexford's conduct. (*Id.*)

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8 and 10, the Court finds it appropriate to break the claims in Boothe's *pro se* complaint into numbered counts, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by the Court. The designation of these counts does not constitute an opinion as to their merit.

> **COUNT 1:** Dr. David and Wexford Health Sources were deliberately indifferent to Boothe's serious medical needs, in violation of the Eighth Amendment.

**COUNT 2:**  Dr. David's treatment of Boothe's hemorrhoid condition constituted intentional infliction of emotional distress under Illinois law.

**COUNT 3:**  Dr. David's treatment of Boothe's hemorrhoid condition constituted medical negligence under Illinois law.

Concerning Boothe's § 1983 claim against Dr. David, to prevail on this Eighth Amendment claim, Boothe must show "that the responsible prison officials were deliberately indifferent to his serious medical needs." *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). Evaluating whether a party has alleged deliberate indifference involves a two-part inquiry: the plaintiff must first show that his condition "was objectively serious," and must then demonstrate that "state officials acted with deliberate indifference to his medical needs." *Id.*

For screening purposes, Boothe's complaint alleges the existence of an objectively serious medical need. An objectively serious need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Factors that indicate a serious need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Here, Boothe's hemorrhoid condition, which led to hospitalization and surgery, qualifies as a serious need for screening purposes. *Jones v. Natesha*, 151 F. Supp. 2d 938, 944 (N.D. Ill. 2001) (aggravated hemorrhoid condition was sufficiently serious for § 1983 claim).

While it is a closer question, Boothe's complaint also alleges the existence of deliberate indifference. To be sure, deliberate indifference is a robust state of mind requirement: a prisoner must allege that a prison official acted intentionally or in a criminally reckless manner –

negligence (or even gross negligence) is not sufficient. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In this vein, allegations from a prisoner claiming that he is generally dissatisfied with his treatment or that he disagrees with the physician concerning proper treatment do not rise to the level of deliberate indifference. *Snipes v. DeTella*, 95 F.3d 586, 591-92 (7th Cir. 1996). However, "the Constitution does guarantee that a prisoner will not knowingly be given inadequate treatment, and deliberate indifference can arise by failure to change clearly ineffective treatment." *Jones*, 151 F. Supp. 2d at 945; *see also Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) ("Allegations of refusal to provide an inmate with prescribed medication or to follow the advice of a specialist can also state an Eighth Amendment claim."); *Kelley v. McGinnis*, 899 F.2d 612, 616 (7th Cir. 1990) (prisoner could recover if he could "prove that the clinic personnel deliberately gave him a certain kind of treatment knowing that it was ineffective"). Reading Boothe's complaint liberally, he has alleged deliberate indifference, and accordingly this claim will be allowed to proceed past preliminary review.

Reading Boothe's complaint liberally, he also appears to bring a § 1983 claim against Wexford Health Sources. For purposes of § 1983, the courts treat "a private corporation acting under color of state law as though it were a municipal entity," *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2004), so Wexford will be treated as a municipal entity for this suit. "[T]o maintain a § 1983 claim against a municipality, [a plaintiff] must establish the requisite culpability (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002) (*quoting Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)). Here, Boothe has only claimed that Wexford provides general "medical protocols and services" at Shawnee. (Doc. 1 at 1.) He has not alleged any concrete

policy or custom attributable to Wexford, and he has not claimed that any act by Wexford led to his alleged deprivation of rights. *See Olive v. Wexford Corp.*, 494 F. App'x 671, 673 (7th Cir. 2012) (allegation that Wexford had a policy of "denying prison inmates adequate medical care" insufficient, as it did not "identify any concrete policy, let alone an unconstitutional one"). As such, any claim against Wexford must be dismissed without prejudice.

Boothe also has raised Illinois state law claims for intentional infliction of emotional distress and medical negligence against Dr. David. Where a district court has original jurisdiction over a civil action, as is the case here, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). Both of Boothe's Illinois state law claims concern the same facts as his § 1983 claim, so supplemental jurisdiction over these claims is appropriate.

To bring a claim for intentional infliction of emotional distress in Illinois, a plaintiff must allege that there was "extreme and outrageous" conduct, that the defendant intended to "inflict severe emotional distress" or knew that there was "at least a high probability that his conduct will cause severe emotional distress," and that the defendant's conduct did "in fact cause *severe* emotional distress." *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988) (emphasis in original). Concerning the last element, Illinois courts require that the emotional distress suffered "be such that no reasonable person could be expected to endure it." *Primm v. Cnty. of DuPage*, No. 92 C 3726, 1993 WL 5931, at *9 (N.D. Ill. Jan. 6, 1993). Even after liberally construing his complaint, Boothe has not identified any emotional distress caused by Dr. David's conduct, let alone the severe distress required under Illinois law. *See Gaskins v. City of Rock Island, Ill.*, No. 4:05-cv-04081, 2006 WL 1793578, at *6 (C.D. Ill. June 28, 2006) (noting that, even for *pro se*

litigants, the "Seventh Circuit has ruled that . . . a plaintiff must show that the defendant's actions were objectively outrageous and the harm caused was very severe to survive a motion to dismiss"). As such, Boothe's claim for infliction of emotional distress must be dismissed without prejudice. *Gondeck v. Clear Title & Escrow Exch., LLC*, No. 11 C 6341, 2012 WL 5200091, at *6 (N.D. Ill. Oct. 22, 2012) (dismissing complaint because Plaintiffs did not allege that they "suffered severe emotional distress as a result of the alleged scheme"); *Titus v. Ill. Dep't of Transp.*, 828 F. Supp. 2d 957, 973-74 (N.D. Ill. 2011) (dismissing *pro se* complaint because Plaintiff did not allege that conduct "caused him severe emotional distress").

Boothe has also raised a state medical negligence claim. Under Illinois law, a plaintiff who seeks damages for "injuries or death by reason of medical, hospital, or other healing art malpractice" must file an affidavit along with the complaint, declaring one of the following: (1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that a claim is reasonable and meritorious (and the written report must be attached to the affidavit); (2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations (and in this case, the required written report shall be filed within 90 days after the filing of the complaint); or (3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this case the report shall be filed within 90 days of receipt of the records). *See* 735 ILCS 5/2-622(a). This documentation "is required to file a medical negligence claim under Illinois law, even in federal court." *Rusinowski v. Vill. of Hillside*, 835 F. Supp. 2d 641, 652 (N.D. Ill. 2011). In this case, Boothe has failed to file the documents required by 735 ILCS 5/2-622(a), and thus this claim is dismissed without prejudice. Boothe shall be allowed to file these documents within 60 days.

**Disposition**

IT IS HEREBY ORDERED that, for the reasons stated, **COUNT 1** shall **PROCEED** against **DR. AFLON DAVID**.

IT IS FURTHER ORDERED that **WEXFORD HEALTH SOURCES** is **DISMISSED** without prejudice from **COUNT 1**. Because there are no further claims against it, Defendant **WEXFORD HEALTH SOURCES** is **DISMISSED** from this action.

IT IS FURTHER ORDERED that **COUNT 2** against **DR. AFLON DAVID** is **DISMISSED** without prejudice.

IT IS FURTHER ORDERED that **COUNT 3** against **DR. AFLON DAVID** is **DISMISSED** without prejudice.

IT IS FURTHER ORDERED that Plaintiff shall file the affidavit required by 735 ILCS 5/2-622(a) within **60 days** (on or before **May 13, 2015**).

IT IS FURTHER ORDERED that Plaintiff's Motion for Service of Process at Government Expense (Doc. 4) is **GRANTED**. Service shall be ordered below for the Defendant who remains in this action. No service shall be made on the dismissed Defendant.

IT IS FURTHER ORDERED that the Clerk of Court shall prepare for Defendant **DAVID**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the Defendant cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered) a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of any document was served on Defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings.

**IT IS FURTHER ORDERED** that Plaintiff's pending Motion for Appointment of Counsel (Doc. 3) is **REFERRED** to Magistrate Judge Donald G. Wilkerson for consideration.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  March 13, 2015**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**