IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ERIC L. BOOTHE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:15-cv-192-JPG-DGW |
| | ) | |
| DR. ALFONSO DAVID, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by Senior United States District Judge J. Phil Gilbert pursuant to 28 U.S. C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the Motion for Summary Judgment filed by Defendant Alfonso David on February 12, 2016 (Doc. 32) and the Response to the Court's February 8, 2016 Order filed by Plaintiff Eric L. Booth on April 27, 2016 (Doc. 40).[1]   For the reasons set forth below, it is **RECOMMENDED** that the Motion be **GRANTED** and that the Court adopt the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Plaintiff was in inmate mostly housed at the Shawnee Correctional Center and under the care of Dr. Alfonso David, and other medical providers, for a hemorrhoid/excessive bleeding

---

[1] In that Order, the Court found that Defendant may be entitled to summary judgment on the merits and directed Plaintiff, pursuant to Federal Rule of Civil Procedure 56(f), to file a written response indicating why summary judgment should not be entered against him.  In his response, Plaintiff also responds to the undisputed material facts identified by Defendant.  However, Plaintiff does not attach any evidence or support a majority of his factual statements with citation to the record.

condition during the relevant time period, 2011 to 2012.[2] Plaintiff specifically claims in this 28 U.S.C. § 1983 suit that Dr. David's failure to adequately treat his condition throughout that time period caused severe anemia which required treatment in an outside facility on March 6, 2012.

The medical records reveal that Plaintiff first complained about having trouble using the bathroom on June 3, 2011 to a nurse (Doc. 33-2, p. 1). Clinical indications appeared normal ("Bowel Sounds x4"), he was prescribed Milk of Magnesia, told to increase fluid intake, and follow-up if the symptoms persisted (*Id.*). This course of treatment appears to be the protocol treatment for Plaintiff's condition/complaint. The record also notes that Plaintiff suffered from hemorrhoids and was taking Dilantin (an anticonvulsant). Hemorrhoids are "swollen, inflamed veins around the anus or lower rectum" that "often result from straining to have a bowel movement" and "are very common in both men and women." *Hemorrhoids*, MEDLINEPLUS, https://medlineplus.gov/hemorrhoids.html (last visited August 5, 2016). Plaintiff did not follow up because his symptoms, presumably, did not persist.

It appears from the record that Plaintiff underwent regular blood tests related to his seizure condition – the record contains results from April 1, 2011 through November 29, 2012. The records reveal that various sub-categories of his blood count, which includes white blood cells, red blood cells, and hemoglobin, among other things, were "out-of-range" on August 1, 2011, September 28, 2011, October 30, 2011, and December 19, 2011 (Doc. 33-4, p. 2-5). All of the blood tests were reviewed by Dr. David and placed in his file. It does not appear that Plaintiff

---

[2] Plaintiff was transferred from Shawnee CC to Stateville Correctional Center from January 5, 2011 to January 27, 2011, June 27, 2011 to July 12, 2011, August 27, 2011 to September 20, 2011, and November 5, 2011 to November 23, 2011 (Doc. 33-1, pp. 1-8).

either sought or was given any treatment because of these "out-of-range" results.[3] In fact, when Plaintiff actually saw Dr. David on November 23, 2011 there is no indication that it was for any purpose other than to renew the Dilantin prescription (Doc. 33-3, p. 1).

On February 17, 2012, however, Plaintiff appeared at nurse sick call with dizziness and vertigo and he was referred to a doctor (*Id*. p. 2). A few days later, he was seen during a chronic clinic visit (for his seizure disorder) and while it was noted that he felt dizzy, no treatment was ordered. Plaintiff again complained of dizziness with activity on March 2, 2012 (Doc. 33-5, p. 1). He was again referred to the doctor and it appears, from the bottom of the form, that Dr. David directed Plaintiff be placed in the infirmary for a 23 hour observation (*Id*. 1, 3). The next day, Plaintiff reported no dizziness, but he had not been moving (*Id*. 4, 5). Plaintiff remained in the infirmary and again complained of dizziness; on March 6, 2012, a blood test revealed "critical results" for Plaintiff's blood count numbers, presumably meaning that they were significantly below the acceptable range (Doc. 33-4, p. 6). He was then diagnosed with potential severe anemia and he was ordered transported to the Heartland Regional Medical Center ("HRMC") emergency room for evaluation and he was subsequently admitted (*Id*. 6; Doc. 1-2, p. 56).

At HRMC, Dr. Clay Demattei noted that Plaintiff had rectal bleeding and chronic anemia that probably had been occurring for more than a month (Doc. 1-2, p. 51-52). An colonoscopy and endoscopy were performed and internal hemorrhoids were discovered (*Id*. 58). The notes indicate that there was "no obvious source for the type of blood loss that would account for this degree of anemia"; however, a rectal hemorrhoidectomy by rubber band ligation was performed to address the internal hemorrhoids (*Id*. 59). The discharge summary told him to have a regular,

---

[3] A review of the records does not reveal a particular pattern to Plaintiff's blood count. For example, it does not appear the Plaintiff's red blood cell count was decreasing with each test.

plain diet, to do activity as tolerated, to follow up with hemoglobin, and to follow up with his prison doctor in 1 week (*Id*. 71-72). He was then returned to the prison and housed in the prison's healthcare unit. In the March 9 progress note, Plaintiff was noted to have a history of hemorrhoids, chronic rectal bleeding, and that he had had a rectal hemorrhoidectomy (Doc. 33-6, p. 3). While Plaintiff complained of pain in his buttocks and requested a stool softener in the early afternoon, by later in the afternoon, there was no rectal bleeding or pain (*Id.* 6). Plaintiff felt fine through the morning of March 11, 2012 with only minor complaints related to the rectal hemorrhoidectomy surgery and he was discharged from the infirmary.

He was again admitted on March 13, 2012 for what appears to be a follow up from his release from the emergency room and after receiving "4 li PRBC" which may mean four liters of blood (PRBC = "packed red blood cell") (Doc. 33-6, p. 13). A sitz bath was ordered in addition to blood work. By March 15, 2012, Plaintiff refused to do the sitz baths, despite being told that it was ordered by the doctor, in his cell but he did continue to do the baths in the healthcare unit from March 16, 2012 to March 21, 2012 as ordered (with the exception of March 17, 2012) (Doc. 33-7, pp. 1-3). Additional blood work done after the surgery again revealed "out-of-range" results from some components of Plaintiff's blood count; however, none indicated that there was a "critical result" (Doc. 33-4, pp. 7-11). The record contains no further significant medical complaint or interaction with Dr. David.

## CONCLUSIONS OF LAW

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir.

2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

To prove a claim of deliberate indifference to a serious medical need, Plaintiff must show that he had an objectively serious medical condition and that prison officials acted with a sufficiently culpable state of mind. *Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted). A serious medical condition can include one that causes substantial pain. *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie County,* 394 F.3d 510, 512-513 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."). As to Defendant's' state of mind, "the infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that

infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). Put another way, Plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. A plaintiff does not have to prove that his complaints of pain were "literally ignored," but only that "the defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

There is no question that Plaintiff suffered from an objectively serious medical condition. The facts presented, however, do not show that Dr. David was deliberately indifferent to Plaintiff's medical needs.

The medical records, while revealing that Plaintiff suffered from hemorrhoids, do not reveal that Plaintiff complained of any rectal bleeding or other obvious blood loss. Rather, on February, 17 2012, Plaintiff complained of dizziness, which may be related to a blood condition or blood loss. He was evaluated, given conservative treatment, and referred to a doctor. The next doctor who saw him appears to be Dr. David for the chronic care clinic related to his seizures. While the dizziness was noted, no treatment was prescribed. When Plaintiff complained about dizziness a second time, on March 2, 2016, the treatment became more aggressive: he was place on 23 hour observation, he was housed in the infirmary, his dizziness (or lack thereof) was monitored, bloodwork was completed and he ultimately was transferred to a hospital for treatment. He was then given surgery and returned to the prison, with no further significant health condition related to

anemia.

Some medical records reveal that Plaintiff's hemorrhoids and his anemia were chronic, meaning that they had lasted for a while. However, none of the records reveal that Plaintiff either complained of or suffered any negative effects (except for the February/March 2012 incidents) as a result of either condition. When he did complain and when clinical results revealed a problem, he was immediately treated, the condition appeared to be resolved, and the course of treatment appeared to be effective. *See Burton v. Downey*, 805 F.3d 776, 786-787 (7th Cir. 2015). His complaints were not ignored nor do any of the treatments provided appear to be inappropriate or untimely or unreasonably delayed. Moreover, there is no other evidence related to any medical care that he received after his surgery from Dr. David that would show deliberate indifference. While Plaintiff *alleges* that follow-up care was brief and did not include all the treatments he wanted (i.e. Metamucil and non-soy diet), there is no showing that it was inadequate in any way. *Snipes v DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (mere disagreement with a course of treatment does not establish deliberate indifference). Plaintiff does refer to a medical record from January, 2014 which shows that he complained of hemorrhoids to another medical provider; however, there is now showing that Defendant was Plaintiff's doctor at the time. There is no showing that Plaintiff's condition in January 2014 resulted from the care that he received in 2012, that the care he received in the past exacerbated his condition, or that any action/inaction on Dr. David's part is related to his current condition. There is a dearth of evidence that Dr. David was deliberately indifferent to Plaintiff's medical needs. Summary Judgment should be granted in favor of Defendant on the merits.

## RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that Motion for Summary Judgment filed by Defendant Alfonso David on February 12, 2016 (Doc. 32) be **GRANTED**, that judgment be granted in favor of Defendant and against Plaintiff, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED:** August 9, 2016

**DONALD G. WILKERSON**
**United States Magistrate Judge**