UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ERIC L. BOOTHE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WEXFORD HEALTH SOURCES INC. and ALFONSO DAVID,<br><br>　　　　Defendants. | Case No. 15-cv-192-JPG-DGW |

## MEMORANDUM AND ORDER

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 43) of Magistrate Judge Donald G. Wilkerson recommending that the Court grant defendant Dr. Alfonso David's motion for summary judgment (Doc. 32). Plaintiff Eric L. Boothe has objected to the Report (Doc. 44).

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P. 72(b)(3). The Court must review *de novo* the portions of the report to which objections are made. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

This case arose after Boothe, an inmate at Shawnee Correctional Center ("Shawnee") at all relevant times, became dissatisfied with the medical treatment Dr. David, a doctor working at Shawnee, provided for Boothe's hemorrhoids. Specifically, he complains that Dr. David changed his medication from Metamucil to milk of magnesia and failed to order that soy, which Dr. David believed aggravated his hemorrhoids, be removed from Boothe's diet. Boothe believes Dr. David's conduct resulted in severe anemia, which required hospitalization, surgery and blood

transfusions. Boothe alleges that after his hospitalization, Dr. David resumed inadequate treatment.

Magistrate Judge Wilkerson found in the Report that there is no evidence from which a reasonable jury could find Dr. David was deliberately indifferent to Boothe's need for treatment of his hemorrhoids. Specifically, Magistrate Judge Wilkerson notes that Boothe's medical records show he saw Dr. David in February 2012 for his seizure disorder and complained of dizziness, but Dr. David did not prescribe any medications at that time. When Boothe complained of dizziness again almost two weeks later, Dr. David order that he be kept him in the infirmary for observation and that his condition be monitored. When Dr. David learned of critically low blood test results a few days later, he ordered Boothe be transferred to an outside hospital. When he returned to Shawnee from the hospital, he was kept in the infirmary and treated, albeit not with the treatment Boothe preferred, until Dr. David determined he was stable and could be transferred to the segregation unit. Magistrate Judge Wilkerson concluded that when Boothe complained and blood tests revealed a problem, he was immediately treated, the condition appeared to be resolved, and the treatment appeared to be effective.

In his objections, Boothe complains that Dr. David was aware of Boothe's prior medical treatment for hemorrhoids and never examined Boothe for hemorrhoids so he could treat them. He also points to a February 8, 2012, grievance in which he complains of rectal bleeding and requests Metamucil, as previously prescribed by another provider, and a referral to a proctologist.

Having conducted a *de novo* review of the matter, the Court agrees with Magistrate Judge Wilkerson that no evidence suggests Dr. David was aware that Boothe was having current problems from constipation, hemorrhoids or rectal bleeding prior to February 2012. The evidence shows Dr. David was aware of Boothe's February 8, 2012, grievance complaining that he

was no longer receiving Metamucil and experienced rectal bleeding whenever he did stomach exercises, but that Dr. David responded that Boothe had been prescribed milk of magnesia for his constipation in June 2011 and had not complained to medical staff about constipation since then. On February 20, 2012, Dr. David saw Boothe at the seizure clinic, where Boothe complained only of dizziness, not of rectal issues.  Dr. David told him to increase his salt and water intake.  Once Dr. David saw Boothe's dizziness was persistent for almost two weeks, he arranged for him to be observed, and once he became aware of critical blood test results, he had him taken to a hospital, where his hemorrhoids were diagnosed, treated and appeared to be resolved.  Even after he returned from the hospital to the prison, Boothe appeared to be better, he was prescribed medication to ease bowel movements and maintain blood test levels, and he was given supplies to perform sitz baths in his cell and was given sitz baths in the health care unit.  He was seen daily for ten more days and periodically thereafter, and blood tests were performed periodically. Additionally, no evidence suggests a medical basis for restricting soy in Boothe's diet or that Dr. David played any role in deciding whether Boothe would have soy restrictions in his diet.  In sum, Dr. David provided Boothe appropriate treatment for the medical conditions of which Dr. David was aware, and no reasonable jury could find he was deliberately indifferent to Boothe's medical needs in that regard.

For the foregoing reasons, the Court:

- **ADOPTS** the Report in its entirety (Doc. 43);
- **GRANTS** Dr. David's motion for summary judgment (Doc. 32); and
- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:   September 28, 2016**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**